CARUTHERS, J.,
delivered the opinion of the Court.
This bill is filed by Hord, as a citizen and tax-payer of Hawkins, to be relieved from the railroad tax, upon the ground that the subscription for the stock by the Court was void, on account of the invalidity of what is called the election before the people.
He makes two objections in his bill to the proceedings:
1. “ That no written notice of the said election was ever posted or set up in several of the election districts or precincts; that in his civil district the notice was posted up eleven days before the election, and in another five days.”
By the second section of the act of 1852, before the County Courts are permitted to subscribe stock in any railroad, the question of subscription shall be submitted to the qualified voters, and obtain a majority in the affirmative. This, by the-act of 1854, must be equal to a majority of all the votes given-for Governor at the next preceding election. That is, without regard to the negative votes, the affirmative must exceed one-half of the entire gubernatorial vote at the last general election. Upon this point there is no question, as the affirmative prevailed by fourteen votes. But the act provides, “that notice of the said election, and the amount of stock to be sub *210 scribed, must be posted at eacb election precinct in the county, at least thirty days preceding the said election.” By the act of 1852, it was only required that a majority of the votes given on the question submitted, should be for the subscription. So we held in the case of the Louisville and Nashville Railroad v. Davidson County, 1 Sneed, 637. It was then very important that all the voters be at the polls, as well those against, as those for the subscription. But it is not so since the act of 1854. It is now to the interest of the negative, that by want of notice and all other causes, the people should not attend the polls, and that no election should be held at any precinct. A negative vote avails no more against the tax than a failure to vote. The affirmative must get a majority of all the votes polled in the preceding election for Governor, without any regard to the negative votes. The interest in the general notice to all the people, and bringing out a full vote, is entirely on the affirmative side of the question. Therefore it does not lie in the mouth of the complainant, and others concurring with him in opposition to the subscription, to complain of the want of notice, or a failure to open the polls at certain precincts. So far as they are concerned, the failure inured to their advantage, and for that reason, they have no just ground of complaint. It would seem, then, to be absurd, to hold the action of the people void for want of this statutory requirement.
But, independent of this view, we would not hold that the failure on the part of the officers to comply strictly with that direction of the act of 1852, in regard to the notice, would invalidate the election, or be regarded as a condition precedent, as is contended, to the binding effect of the decision of the people. Its whole object is to give information to the voters and tax-payers, and excite their consideration of the proposition submitted, and bring them to the polls. Where it clearly appears, as in this case, that much excitement prevailed, full discussion was had, and a deep and pervading interest in the question existed in every district of the county, the whole object of the written notice was answered. It would savor too much of technical precision, and an adherence *211 to the letter, without regard to the spirit and reason of the statute. This, as well as all the other requirements of the statute, ought to be observed in this important proceeding, by which a heavy tax is saddled upon the people] But, on the other hand, the same people have a deep, general interest, in the great object to be promoted by the burthen to be imposed, and the expressed will of the majority ought not to be defeated by unsubstantial objections on the part of the minority. It has been invariably held, upon analagous questions, that where it appears that no injury has resulted from a failure to observe these requirements of the law as to notice, and the object of the notice is otherwise accomplished, that the law shall only be regarded as directory. Our books are full of these cases, and they need not be cited. In the case in hand, the canvass was very thorough and exciting, and the whole community enlisted in the animated contest. The people were aroused, and there was no want of ample notice of the election.
2. It is next charged “ that appliances were used to influence the result of this election, wholly indefensible, and if not amounting to direct bribery, were altogether inconsistent with the freedom of the ballot and the purity of the elective franchise, and, in fact, a fraud upon the electors who felt it to be their duty and interest to oppose the subscription.”
The specification under this charge will be found in the following bond, drawn up and signed on the 3d of August, 1857, just three days before the election:
“ Provided the tax for the Rogersville and Jefferson Railroad shall receive a majority of the votes in Hawkins county, we, the undersigned, bind ourselves, that if the second civil district, in the county of Hawkins, Tenn., give a majority of the votes of said civil district in favor of the railroad tax, in the election which is to take place on the 6th day of August, 1857, that we will pay an amount equal to the amount of said railroad tax of the said civil district, to whatever person or persons may be appointed to receive it, for the purpose of im *212 proving or making a good road across Clinch mountain to Rogersville, at any point that a majority of the voters of said district may choose: and for the faithful performance of our said agreement, we hind ourselves in the sum of f5000.”
This is signed by twenty citizens of the county, under their hands and seals. Most of the directors and the president of the road are of the number, but not officially, and the corporation is in no way implicated as such. They are all prominent and influential men. It is strenuously insisted that, although it was not so regarded by the respectable citizens who entered into the obligation and made the proposition, yet it was in the nature of a bribe, and of such illegal and immoral tendency as to entirely vitiate the election, and authorize a Court of Chancery to declare it null and void. We do not so regard it. The case does not make it necessary to consider what would be the effect of an offer and acceptance of a bribe or private reward for votes. That is not this case. It was a proposition by one portion of the citizens of the county to another, that if the latter would co-operate with them in taking a joint burthen upon themselves to promote one public improvement, they would assist them in another, in which the persons addressed felt a more immediate local interest. That is, if the citizens of the second civil district of the county would concur with them in voting in favor of a subscription, by the county, of $50,000 of stock in the Rogers-ville and Jefferson Railroad Company, they would subscribe an amount equal to the tax mat might thereby fall upon the citizens of that district, in conseaRence of said subscription, to make a good road from that district, across Clinch mountain to Rogersville, to facilitate their access to the terminus of said railroad. This was nothing more than an appeal to the public spirit of one portion of the people by another, and to stimulate them by the offer of reciprocal benefits, in the general improvement of the county, for the interest of all. We can see nothing in it against public policy or good morals. It cannot be assimilated to elections for political or other offices, *213 and, therefore, we need not consider what the effect of such a thing would be in those cases. The doctrines in relation to the elective franchise, and the vigilance with which the purity of the ballot-box should be guarded, have no direct application to cases of this description. This is not properly an election, but a decision of the people in reference to a matter of pecuniary, private, and public interest. The county, as a political corporation, are called upon to determine whether it will take stock in a private corporation, organized to advance both their individual and common welfare. This question, it is provided by the law, shall be referred to the voting citizens of the county, before the subscription shall be made by the county authorities. In deciding this question, the citizens may operate upon each other by all the arts of persuasion and influence, debate and eloquence, they see proper to adopt, sc far as the binding force of their decision is concerned. Their false representations, fallacious arguments, and improper influences, are questions of morality, affecting the personal character of the actors, but cannot invalidate the result. If the rigid rubles contended for in argument were to be adopted, perhaps few elections would stand, and the government could not go forward ; nor many of these grand improvements, requiring the united means and co-operation, both voluntary and coercive, of the whole community, be accomplished.
The subscribers to this instrument, feeling the deep importance of the great work in question to the common prosperity, were willing not only to take upon themselves the burthen of the taxation that would result, but also to aid the people of that particular section of the county in a public work they had at heart upon the prescribed conditions. What harm was there in it ? what mischief could it do ? Two great public objects were to be promoted by it. It was an address to their judgment, through their common interests. There •was nothing sinister or mercenary in it. It was tainted with none of the ingredients of a bribe. The motive was high and elevated, and in no way censurable.
*214 But if it were morally wrong, and against public policy, we are unable to see bow it could be made to have the effect of vitiating, the so-called, election. It might in that case, perhaps, be made available in a contest before the County Court on the return of the votes. The question is a very different one when the proceeding is attempted to be impeached in a Court of Equity.
We have preferred to examine this case upon its merits, without reference to the various objections taken to the jurisdiction of the Court, on account of the finality of the action of the County Court, as well as other points made in the answer and arguments for the defence. We do not in any way pass upon them, as we think the case clear upon its merits.
The conclusion is, that the decree of the Chancellor is affirmed, and the bill dismissed with costs.